UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LOCAL NO. 131 NATIONAL CONFERENCE OF FIREMEN AND OILERS, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO-CLC, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | 1:04-cv-1323-SEB-JPG |
| vs. | ) ) | |
| INDIANAPOLIS WATER COMPANY; NISOURCE INC; US FILTER INDIANAPOLIS WATER, LLC; AND VEOLIA WATER INDIANAPOLIS LLC, | ) ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS**

**I. Background**

On May 1, 2002, NiSource, Inc. ("NiSource") and its subsidiary, IWC Resources Corporation ("Resources") finalized the sale of Resources subsidiary and NiSource indirect subsidiary, Indianapolis Water Company ("IWC") to the City of Indianapolis ("City"). Pursuant to the asset purchase agreement ("APA") between the parties, the City agreed to "offer employment" to certain identified employees at IWC, including all union employees. The APA referred to those employees who accepted the offer of employment as the "Transferred Employees." In addition, Resources agreed to remain responsible for "any liability, claim or expense arising from or relating to the employment

relationship between Seller (Resources) or any of its [a]ffiliates and the [e]mployees either prior to, on or after the [c]losing." And, the City agreed to remain responsible for "any liability, claim or expense arising from or relating to the employment relationship between Buyer (City) and the Transferred Employees after [c]losing." Concurrent with this transaction, the City entered into a management agreement with Veolia Water Indianapolis ("Veolia") whereby Veolia assumed responsibility for managing IWC's assets and employing the IWC employees who accepted an offer of employment.

Local No. 131 of the AFL-CIO-CLC ("Union") represented certain IWC employees and the APA provided that those union employees who transferred would continue their employment "in accordance with the terms and subject to the conditions of the relevant Collective Bargaining Agreement" ("CBA"). At the time of the asset sale, there were several dormant grievance proceedings which the Union had instituted against IWC. Some of the grievances were brought on behalf of particular employees and some were what are commonly referred to as "policy grievances", brought on behalf of the entire union workforce. These grievances remain unresolved. Now, more than two years after the asset sale, the Union filed suit against IWC, NiSource and Veolia on August 12, 2004 to force arbitration of seven grievances.

In response to the Union's suit, IWC and NiSource filed suit against the

2

City, seeking indemnity for the costs of defense incurred in responding to the continued prosecution of the grievances as well as any damages awarded in arbitration that might be related to the employment relationship following the asset sale. The City, in turn, filed a motion to dismiss the third-party complaint for failure to state a claim upon which relief may be granted. For the reasons discussed below, the City's motion is granted.

**II. Standard Of Review**

In reviewing a motion to dismiss under FED. R. CIV. P. 12(b)(6), we look at the complaint in a light most favorable to the plaintiff. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). This entails accepting all well-pleaded allegations as true and drawing any reasonable inferences from them in the plaintiff's favor. *Id.* A motion will be granted only if it appears beyond a reasonable doubt that the plaintiff cannot prove any facts which would support a claim for relief. *Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004). If, in order to reach a determination on the motion, we rely upon matters presented by the parties which are outside the pleadings, we must treat the motion as one for summary judgment and dispose of it only after allowing the parties to provide supporting materials consistent with the provisions of Fed. R. Civ. P. 56. *Edward Gray Corp. V. National Union Fire Ins. Co. Of Pittsburgh, Pa.*, 94 F.3d 363, 366 (7th Cir. 1996). However, a copy of the contract sued upon which is made an exhibit to the complaint may be considered in assessing the

sufficiency of the complaint without converting a Rule 12(b)(6) motion to one under Rule 56.  *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

**III.  Analysis**

It is undisputed that the City had a contractual obligation to offer employment to the IWC employees.  It is also undisputed that the transferred IWC employees never became City employees; rather, they were offered and accepted employment with Veolia.  In briefing of this motion, IWC and NiSource reference the obligation to employ as though it were the same as an obligation to offer employment.  They argue that the City delegated its duty to employ to Veolia, essentially interpreting the APA to have created a single, ongoing obligation to employ and to assume responsibility for all employment related claims subsequent to the asset sale.  That simply is not what the unambiguous contractual language provides.

The City took on two separate obligations which are relevant here.  First, it agreed to "offer employment."  The reason the obligation was termed an offer of employment, as opposed to an obligation to actually employ, is because indentured servitude is not permissible and any employee has the right to object to a mandate of continued employment.  Practically speaking, when a company is sold, employees generally accept the transfer of their employment to the purchaser or the purchaser's designee assuming the benefits of that

relationship, such as pay and fringe benefits, remain the same.  But a contract between the buyer and seller cannot require continued employment.  Here, the agreement required only an offer of employment, and IWC and NiSource do not claim a breach of that provision of the agreement.  Instead, they argue that the City delegated its contractual obligation to Veolia.  Assuming that is true, it is still of no consequence; IWC and NiSource never objected at the time to Veolia, rather than the City, offering employment to the IWC employees and their belated attempt to claim a failure on the part of the City to make its own, separate offer of employment is unavailing.

The second obligation assumed by the City under the APA was sole liability, after the sale, for employment-related claims arising from the employment relationship between it and any "Transferred Employees."  That obligation is later referenced in the APA as an assumed liability.  The City was to indemnify NiSource and its affiliates from damages arising out of such assumed liabilities; therefore, NiSource and IWC contend that the indemnification guarantee applies to the labor grievances at issue here.  The indemnification might afford some protection to plaintiffs had the City, rather than Veolia, actually employed these workers.  Section 5.9(b) of the APA defines "Transferred Employees" as employees who accepted the offer of employment and, since the offers of employment were not extended by the City, no employment relationship was ever established between it and any Transferred Employees.

IWC and NiSource revisit the delegation issue, arguing that though the City performed its duty under the APA to offer employment through its designee, Veolia, the City was not thereby relieved of its obligation to be solely responsible for employment claims brought by the Transferred Employees.  In support of this argument, plaintiffs cite IND. CODE § 26-1-2-210, part of Indiana's Uniform Commercial Code, which allows for delegation of contractual duties unless otherwise agreed, but mandates a continued duty to perform under the contract.  This argument fails for at least two reasons:  First, the cited section of the Uniform Commercial Code relied upon by IWC and NiSource (Chapter 2) applies only to the sale of goods between merchants, which is clearly inapplicable here.  See, IND. CODE §§ 26-1-2-101, 26-1-2-104.  Second, the argument ignores the fact that the City never entered into any employment relationship with the Transferred Employees, as that term was defined by the agreement.  Consequently, the City has no liability with respect to the claims of the current employees of the water company.  If anyone does, it is Veoila, as reflected in the fact that Veoila is already named as a co-defendant in the Union's action seeking to compel arbitration.

The Union's arbitration action correctly names Veoila, at least with respect to identifying it as a party who might be liable for employment related claims or contractual grievances.  Assuming the grievances are still viable, and

that the Union has not waited too long to attempt to force arbitration (a question we do not attempt to answer today), those who actually employed the individuals and signed the CBA are the only ones potentially liable. In any event, the City is not.

Finally, NiSource claims in the alternative that the APA is ambiguous as to the parties' intent and, therefore, the "interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." *Dawson v. General Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992). However, under Indiana law, a contract is not ambiguous simply because two parties have a controversy over its interpretation. *Abbey Villas Development Corp. V. Site Contractors, Inc.*, 716 N.E.2d 91, 99-100 (Ind. App. Ct. 1999). It is ambiguous only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation. *Id.* We find no ambiguity in the sections of the APA cited by IWC and NiSource. If, at the time of sale, they had wanted to impose continued responsibility on the City, in nondelegable, nontransferrable terms, for post-sale employment claims or grievances under a CBA, without regard to the identity of the actual employer, they could plainly have done so in their agreement. That is not, however, the agreement the parties actually reached.

### IV. Conclusion

The APA does not require the City to indemnify NiSOurce or IWC against claims arising out of an employment relationship between Veolia and employees at the water company who were then and are now represented by the Union.  Consequently, the City is entitled to dismissal as a third party defendant.  We make this determination based solely upon the pleadings and the APA, which was attached to and referenced in the Third Party Complaint brought by IWC and NiSource.  The parties submitted other materials outside the pleadings and the APA, which we have not relied upon in reaching this decision.  However, having not converted this motion to dismiss to one for summary judgment or allowed the parties an opportunity to submit all their supporting materials, final judgment shall not enter at this time.

Accordingly, the City of Indianapolis' Motion to Dismiss (Docket #28) is GRANTED and the Third Party Complaint filed by NiSource and IWC against the City is hereby dismissed.

09/30/2005

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jboyers@woodmaclaw.com

Brian D. McCarthy
JACKSON LEWIS LLP
mccarthb@jacksonlewis.com

John D. Nell
WOODEN & MCLAUGHLIN LLP
jnell@woodmaclaw.com

Patricia Costello Slovak
SCHIFF HARDIN LLP
pslovak@schiffhardin.com

Richard J. Swanson
MACEY SWANSON AND ALLMAN
rswanson@maceylaw.com

Nora Kersten Walsh
SCHIFF HARDIN LLP
nkerstenwalsh@schiffhardin.com

Kelly Jean Whiteman
OFFICE OF CORPORATION COUNSEL
kjwhitem@indygov.org

William P. Wooden
WOODEN & MCLAUGHLIN LLP
wwooden@woodmaclaw.com